May it please the Court, my name is Trey Nader-Maslami and I represent the petitioner Qitian Ni. Qitian Ni is an alien who requested political asylum in the United States and was in removal proceedings. At the time of his individual hearing he was a 25-year-old married male from People's Republic of China who worked as a security guard there and he was a father of one child. Mr. Ni and his wife at the time that his child was born was under the minimum age requirement for marriage in China and when he attempted to register his child in the household registration he could not do so because the child was born before the couple could legally marry. Chinese officials attempted to coerce his wife into wearing an IUD but the wife could not wear the IUD due to a medical issue that she had. He was eventually able to register that child after she agreed to have a checkup every three months. Mr. Ni's wife then becomes pregnant for a second time in 2008. It's an unauthorized pregnancy under the Coercive Population Control Program of China and Mr. Ni asked his wife to stay at her brother's home and advised her not to go out out of fear that somebody in the neighborhood might report her to the Chinese government. Mr. Ni's wife's father passes away in 2009 and Mr. Ni travels to a different province where she is, Yunnan province, to join his wife and help with funeral arrangements but that is where they are confronted with family planning officials who go to the home and in order to take the wife away and coerce her into having the pregnancy terminated. The family planning officials claim that someone in the neighborhood reported it and Mr. Ni argues with them and winds up getting into a fight with them and they wind up calling the police and having him taken to a Chinese police station where he's held for 10 hours and he is beaten with batons. I believe the testimony is that they placed some kind of a board on his back in order not to leave marks and that they beat him with batons and eventually he's released, goes home and finds out that his wife's second pregnancy has been terminated. The issue in this case is not credibility. The immigration judge found Mr. Ni to be totally and completely credible so what we have here is an issue, we have several issues here but credibility is not one of the issues here are does the severity of what happened to Mr. Ni constitute past persecution? Number two, does he have a well-founded fear of persecution? And number three, is it possible that he may also have suffered past persecution in the form of economic persecution? So those are the three issues that we have. There's one interesting issue that comes up on page 15 of the government's briefing footnote where the government notes that the board did make a mistake in their finding. Both the immigration judge found and the petitioner testified that he did in fact seek medical treatment for his injuries. For some unknown reason, the board finds that there is not past persecution because he did not seek medical treatment for his injuries. Now the government admits that that is an error on their part but says that it's harmless error. Now I have a significant difference with the government's position on this. To me, harmless error is something that would not have moved the case in one direction or another. Really, you know, there's an error if the error had not happened, it would not have made a difference to the case. However, here we're talking about the issue of whether he sought medical treatment and that is a very important issue to the determination of whether Mr. Ni has suffered past persecution or not. I can't understand why the government believes that this is harmless error when that is something for the board to decide. This is the board's expertise. It is their expertise to decide on a case-by-case basis whether something is past persecution or not. It's not really for the Court of Appeals or really anyone else to say that whether this is in fact past persecution, especially when the board itself did not consider the fact that this person did in fact seek medical treatment for his injuries. I believe that's a very important issue and I believe that issue by itself should send the case back to the board in order for them to re-evaluate whether this person has suffered past persecution based on the fact that he did in fact seek medical treatment for his injuries. There are some other issues in this case that I was somewhat concerned with the government's brief in that they say that, you know, in this case the immigration judge says, okay, well the person was fired from his job as a security guard in China and you'll notice that there is a notice of dismissal and also the response testimony that says that he was dismissed because he engaged in violation of family planning policy in China. Now the immigration judge says, well, he says China is a quasi-capitalist regime. He could have simply sought employment in the private sector and therefore he's not foreclosed from employment. I believe Mr. Ni's testimony was that he sought employment for about a month, couldn't find employment and that he was repeatedly told, look, there's this entry in your personnel file that says that you violated family planning policy. He was denied a job each and every time. Now if you look at the background material of this case, there's nothing in the record that says, first off, the government says that that's just dicta. I don't believe that it's dicta. I believe the judge based his denial of this application in part because he believed this was a private sector. He says that very clearly. I don't think that's dicta at all. Dicta is something that really didn't have a bearing on the case, but it does. And there's nothing in the record, if you go through especially the report of the Department of State, I did not see anything in the report of the Department of State that said whether a person who has something in a personnel file that says they violated family planning laws of China could get a job regardless of whether it's private or public. I did not see a distinction in the Department of State report as to whether this person It just says that frequently people lose their jobs or are denied employment because of violation of family planning laws. But it doesn't say, well, they only lose public jobs or that they're allowed to have private jobs. It doesn't say anything like that. So really in that regard, both the board and the immigration judge engaged in impermissible speculation and they based their opinion, at least in part, on the denial of this application. Where's the wife now? Well, under the record, the wife is in China. The child? In China. And he's here? That's correct. This application is not based on the fact simply that she had an abortion. We all know that the case law says that, you know, when a person's spouse suffers an abortion that they're not entitled. I'm not arguing at all that he's entitled to asylum based on the fact that his wife suffered an abortion. The only place the family could get together is for him to go to China. Well, I mean, the only way the family would get together is if they're in the same country. I mean, these days he could go back to China, she could wind up here. I'm not really sure, but that's the way that they could be reunified, yes. Although he did testify in his testimony that he said that if I were to return, I'm fearful that one of us would suffer sterilization. And he did not say it was just her or it was just him, it was either of us. So that's what his testimony was regarding well-founded fear. So in this case, we have that issue and we have the issue of whether the beating he received in the police station was severe enough. Now I've already talked about the fact that there's a mistake in the court decision regarding whether or not he sought medical treatment. There's really no litmus test of what persecution is under the Immigration and Nationality Act. And the courts legally are required to treat them on a case-by-case basis. The Board of Immigration Appeals appeared to, when you read what they wrote, they appear to assume that in order to suffer past persecution, someone has to have either long-term injuries or have sought medical treatment in order for it to be past persecution at all. But that's simply not what the law says. No, but there's a body of court circuit law that delineates more injuries and persecution. I'm not unsympathetic, but that's something that you have to acknowledge. I do, but on the other hand, it's still, it's for the board to determine this and the board made a very critical error as to whether this person sought medical attention or not. I think it should be reversed for that basis alone. They made a very, just a gaping error in their decision, and it's for them to decide whether that medical attention that he sought changes their decision one way or the other. It's not for the Court of Appeals. This is their province. It's for them to decide this matter. So it's not harmless at all. I could see harmless whether the person, for instance, was in jail, even that would be harmless, whether the person was in jail nine days or 10. Really, harmless error is something that wouldn't move the case one way or the other, but medical attention is just a very, that's a big difference. When the board decided this case, they were clearly under the assumption that this person never sought medical attention, but that's not what the immigration judge found, and that's not what Ms. Dreening testified to, and it's not for the court to substitute the opinion of the board as to whether that does become past persecution or not. So regardless of what the court's impression of whether the case law of the circuit would dictate something more severe than this, it's still up to the board to decide after they acknowledge that the person did, in fact, seek medical attention, whether under their opinion this is past persecution or not. So it really, I think that that's really the critical distinction here under whether this person has suffered past persecution. Now, even under the case law of this circuit, I'm not sure that there is a litmus test that says that the person has to have permanent injury or long-term injury. I'm not sure that there's an exact quote that says that, yes, many of the individuals who have suffered past persecution under the case law of the circuit have suffered those types of injuries, but I'm not sure that I've seen cases from the circuit that says if you do not suffer a long-term injury or permanent injury, you have never been persecuted. Let's just leave aside for a minute the law of the circuit, which is what it is. The statute says final order denying asylum is conclusive unless manifestly contrary to the law. Correct. However... If you look at everything that the board had before it, what it said, what it didn't say, it doesn't mean that if the board commits one factual error, we can conclude that that's manifestly contrary to the law. However... You would acknowledge that, right? Yes. However, the factual error in this case is not a minor error, and it is not a harmless error. In fact, there's a case, I believe it's Cassie versus... Let me find it. I believe it's Cassie that discusses the difference between what is harmless error that would compel and what is not a harmless error. Let's see. Yeah. They discuss it. They cite the case of Nagarath versus Asheville, I say they, the government, which states that an error is harmless and does not compel a result if the result would not be different if the error had not been made and the court does not know whether the board would have reached the same result if they had considered the fact that Mr. Nee had, in fact, sought medical attention. There's a case called Cassie versus Holder 660F3710 that says that if the mistake is crucial to the issue of what the decision in the case is, then it is not harmless error. Now, I don't believe that something as to whether a person sought medical attention or not is a crucial issue to whether they've suffered past persecution. It's not harmless error, as the government contends. And Carkey versus Holder itself, which I believe was cited by the government in their own brief, states that permanent or serious injuries are not required for showing of past persecution. And that's cited in the government's brief. So even they admit that permanent or serious injury is not required for showing of past persecution. Again, the Immigration Justice Statement regarding the possibility with which Mr. Nee could have found a private job simply is not dicta. It is something that he based all the government claims in their brief. It is dicta. I mean, this is what he based the decision upon as far as whether or not Mr. Nee suffered past economic persecution. But all of the things that the immigration says regarding that appear to be the immigration judge's personal opinion. He doesn't point to anything in the record. I don't see anything in the record myself in reviewing it that says that the private sector either would offer him a job, whether there were a lot of jobs in the private sector, or whether the private sector would forego the fact that there's something in this individual's personnel file that says that he violated family planning policy. He says he sought many jobs, he couldn't get hired, and that was the reason that they gave him over and over again. And again, as far as your Honor's question, whether it compels reversal, speculating conjectures to something as central to the case as whether the person could find a job or could not find a job, or what the reason was, or what kind of employment he sought, and when that speculation is the basis of the decision, it does compel reversal. So I think Mr. Nee has in fact stated that there is a significant error with regard to whether he has suffered past persecution in the form of economic persecution. Okay. Now, as far as the medical treatment is concerned, it should, you know, I believe it supports the error, and harmless error means it has no bearing on the procedure used or the substance of the decision reached. But it did in fact have, the board cites it as its reason for finding there's no past persecution. So I don't think that error is harmless at all, and I do believe that the error compels reversal in this case. Now, also I noticed that the government itself in their brief characterized Mr. Nee's injuries as quote-unquote minor bruising, but they don't point to anywhere in the record where it says that it's minor. Their own personal opinion is minor in their brief. However, the immigration judge himself said that the injuries suffered by the petitioner were extremely painful. So, I mean, they're saying, the government's saying in their brief that they're quote-unquote minor bruising, it's their brief on page 14, but they don't point to anywhere in the record which says that it's minor. You know, the immigration judge's decision contradicts what they say when he says that the injuries he suffered were extremely painful. So it's a merit-based, I saw the record. I'm sorry, I see I've run out of time. So I'll see to the government. Thank you. May it please the court, Breanna Stripley on behalf of the respondent, the Attorney General of the United States. Your Honors, admittedly this case presents a set of facts that are extremely unfortunate. And the United States certainly does not condone the behavior that Mr. Nee underwent. However, the record does not compel the finding that the harm he suffered rose to the extreme concept of persecution. Similarly, Petitioner also failed to demonstrate that he has a well-founded fear of future persecution when his claims are based on speculation, and he presented no objective evidence. Your Honors, this court has held that persecution involves the infliction or threat of death, torture, or injury to one's person or freedom. As this court stated in Lee, courts have been reluctant to categorize detentions unaccompanied by severe physical abuse or torture as persecution. It acknowledged the Eighth Circuit's decision in Eusebio by saying even minor beatings and detentions, even detentions lasting two to three days, do not constitute persecution. Here, Petitioner was detained on one occasion for ten hours and was hit with a baton on the back of his back, which did result in bruising. He did seek treatment and those went away. This is also one of those cases where the determination of whether something rises to the level of persecution is extremely factually intensive, and so the courts somewhat delineate different ways to figure out whether or not it means that. One of the things that this court considers is whether it's systematic or an isolated incident. Again, this is an isolated incident. One thing I will point out to the court that we mentioned in our brief is that neither in the asylum application nor Petitioner's statement attached to his asylum application or his wife's statement mentions the beating. Now, that's not to say that we're questioning the credibility. We accept all the facts as true. Where did you get the minor bruising characterization? Well, there's several things. One is that no party in either the wife of the statement or his own statement mentions the beating, so when he picked her up three days later from the hospital, there was no mention as to the severity of the bruising. There's also no documentation to elaborate on what medical treatment he thought, and the fact that he did testify that it, in a way, constitutes minor. So there's no evidence for that? Y'all just made that up, put it in the brief? Well, most of the times in other circuits when this happens, that type of brief detention coupled with these sets of facts, other courts have characterized that as minor, and so taking that language from other courts. So one of the main standards here, obviously, for substantial evidence is that— What about the misapprehension of the facts? The misapprehension by the IJA and the BIA of whether he sought medical attention? He says, the petitioner's lawyer says, that's enough, right there. Well, Your Honor, the first and foremost and most important point in this regard is petitioner never raised that in his opening brief to this court. That issue is weighed. It was only raised by the government for the court's benefit to clarify the record in this regard in our footnote number three in our answering brief. But to address your concern, Your Honor, this is harmless error because, one, the IJA did acknowledge this. On AR-54, he specifically recounts the treatment and the bruising and that he sought medical treatment. This is a case where the board affirmed the IJA's decision. So under Niang, when we reiterate this, this court is reviewing both of those decisions and the factual findings and reasoning contained in both the decisions. So again, the immigration judge clearly covered that. Did the board adopt it? It did not adopt. It affirmed and supplemented the IJA's decision. And so again, this is another reason. But even if— To the extent it affirmed and supplemented, if it said that there was—did it say there's no hospitalization? It said no medical evidence, right. Well, then it seems to me it's rejecting that portion of the IJA's decision. I mean, it's hard to argue that adopting that portion of the IJA's decision. Sure, Your Honor. So two points on that. The first being is, even if it is a straight error on behalf of the board, which, given that two facts can't also be correct, he can't not have gone to medical, like the IJA said, and had he testified, and also to have gone to seek medical treatment. But even if that is the case and that is an error on perhaps that of the board, it is a harmless one. And the reason why that's a harmless one is because that evidence, even if taken in account, would not change the outcome of the case in any way. Courts evaluate whether or not someone seeks hospitalization as a measure to severity. It is not a per se finding. So if an alien goes and seeks medical treatment, it's not an equate to past persecution or that harm rises to the level. Rather, it's an indicator. And in this case, the evidence is scant on this. I will just note that there is medical evidence, plenty in this record, of other people. So his mom's sterilization, his wife's abortion, his wife's urine condition, all of that is in the record. But what's missing is his actual trip to the private clinic and any report of that, which, again, is not to doubt that he went. But if we had a doctor's note, if we had something like that, it would evaluate and be able to kind of address the severity. What did the doctor do? He characterizes it as they struck the paperboard with police batons, and there were many bruises in my back, and I just have treatment for the bruises. Well, do you have any lasting injury as a result of the treatment? I had several treatments and then condition improved. Afterwards, I discontinued to receive treatment. Right. Again, correct. But in this case, Your Honor, when we go back to the standard of review, it's an uphill battle given that this court and other sister circuits, and therefore many other reasonable adjudicators have found, in other instances, harm that was more severe than what petitioner experienced did not compel the finding of a past persecution. In factually intensive, as the rise to the level analysis is, it's sometimes helpful to see an illustrative. So, for example, in Dijonda, the U.S. Attorney General, which is the 11th Circuit case, the 11th Circuit held that holding a 36-hour incarceration in a small cell with 12 people, accompanied by multiple beatings, resulting in bruising, scratchings, and hospitalization did not compel a finding of a past persecution. I hear you on that, and I think that our – I don't know that you really have to go to the 11th Circuit. I think our case was that way, too. But what if the board had determined that this constituted persecution? Would that be – I mean, by the same standard, right? Did you say it's an uphill battle? Do you think the Attorney General could get that reversed? I'm sorry. Can you restate your question? What if the board had come out the other way on exactly the same evidence? Meaning, if the board's decision said that, based off the evidence, the immigration judge and they disagreed? No. Both the board and their – there's agreement between the immigration – D-I-J and the board. But he wins. Does the Attorney General come in, and is the Attorney General able to say that, under this standard of review, that's wrong? Well, it would be up to the Attorney General in the first instance to decide that, but – I understand that. But what I'm saying to you is that this is why the standard of review is so critical, and that's, I think, the essential point that your colleague on the other side was making. So, since we circuit courts basically have to bless whatever comes out, shouldn't we make what the basis for what the agency does be correct? Well, again, in this case, because it would be harmless there, it wouldn't change the outcome of it. There would be no point in actually sending it back down. How do you know that? Because there's no evidence whatsoever in the record that the – what he would have underwent, even accepting – so the I-J accepted as true, came up with one finding, which was that even accepting that he did go to the medical clinic to see, at max, three days, right, because he picked up his wife three days later, for bruising, that eventually went away, that that, even in conjunction with everything else in this case taken cumulatively, did not affect the outcome. And the Board has no other reason – maybe it was imprecise with this language, maybe it was these – but it doesn't change the outcome. Even if it kicked it back, which would be a remand for this issue, you wouldn't come up with something different, and that's the definition of harmless error. If you kick it back and are going to come up with the same outcome, it really doesn't make a core difference in this case. I will just mention that it seems, if we're just logically approaching this, that in order for the BIA to address this, it would have to find like a – make a finding that the I-J was clearly erroneous, right? Because you have a – anytime that they're going to overturn a factual finding, they have to make the finding that it's clearly erroneous. It seems hard-pressed. They did no analysis on – that they found the I-J's finding that he sought medical attention clearly erroneous. I think it would be hard to do so, given that it's supported in the record. No analysis was done, so it seems logical that what – really what happened was just messy language on behalf of the Board, that really what was supposed to be in there was a modifier. So corroborating evidence or additional evidence or something along those lines rather than testimonial evidence. Basically, any evidence besides his testimony to support medical evidence. And that's just – I'm not saying that that's the case. That's certainly not what the Board said. But even if you take it on every degree against the government in this regard, and if you construe this whole matter as unfavorable to the Board, it still doesn't warrant reversal. With regards to Petitioner's argument about the I-J taking administrative notice that China has a quasi-capitalist economy, I will just note that with regards to that argument, it's not out of nowhere on the country report on AR-154. They do mention in this section of workers' rights – they do mention private investment companies and foreign investment companies. But that really doesn't matter because at the end of the day, what the Board did was it cleaned it up. The Board said, you know, we agree that you did not demonstrate that the harm rise to economic persecution. And they didn't get there the same way. They said, look, you only showed that you weren't working for a month, that you were fired and were unable to find employment for a month. That alone did not do it. And the reason for that is, in order to establish economic persecution, they have to establish that the harm was so severe that it threatened their life or liberty. In this case, all we have is evidence that he was fired from his job as a security guard, that he sought employment for a month and was unable to find any. But even the Ninth Circuit in Nogolka has found that losing one's job based on a protected ground is discriminatory in nature but is not economic persecution that rises to that level. Similarly, the Board's decision in matter of TZ, I think the real core point here is you just need more information than what's in this record. So, for example, we don't know if petitioner's wife has a job. We don't know what their finances are like. We don't know what petitioner's loss of that job, how that impacted them. And that's really, if you're, you know, a petitioner who's carrying the burden here, needs to demonstrate those factors in order to establish economic persecution. And the testimony alone of just being unemployed for one month is instant to do so. Petitioner also argues that with regards to the agency did not consider the cumulative nature of this, the government would respectfully disagree. Paragraph 6 of the Board's decision, it specifically says, in view of these circumstances. And so, after it's already laid out, it's individual for denying past persecution for the harm, as well as economic persecution. They then go on to say, and in sum, in view of these circumstances. So, the Board does not need to say the specific words that we also, in aggregate, find that the harm does not rise to the level. Or in cumulative, we do not find it. What's needed is that they considered the record and that there's evidence that they considered the record as a whole. And I'll just simply add to that that. So, you'd say just two paragraphs would do. We have two sentences. We've considered the record in view of these circumstances. It doesn't. Your Honor, I think in this case, because it was analyzing each individual claim, so past harm, then economic persecution, and then a paragraph saying, in light of all of this, yes, that would be sufficient. Again, the standard is whether or not this Court, you know, the Board issued its decision in a way that raises and announces its decision in terms sufficient for this Court to review, and it's done so here. If there's any further questions from the Court. I don't think so. Thanks very much. May it please the Court, regarding the issue of the finding of facts, that is a matter to be determined by the Board and the immigration judge in the first instance. So the issue of whether Mr. Neal got medical treatment is really an issue for the Board to decide, not for the court to decide. I'm looking at the case of Cassie v. Miller, 660F3710. It's a Fourth Circuit case from 2011. It says, notwithstanding the presence of error, we are entitled to permit a BIA decision to stand if the legal and factual affirmatives, quote, clearly had no bearing on the substance of the decision reached. By contrast, we have remanded an immigration proceedings where, quote, without the IJ's erroneous perception of the record, it is far from clear that the IJ would have made the inferences and conclusions that she made, or if, quote, it is likely that the IJ would have reached a different outcome if he had given due consideration to the independent evidence that he improperly discounted. The Attorney General says you all waived that. That is mentioned in their brief, and the issue of whether he sought medical attention is also raised in the petitioner's brief. I don't believe that the issue is waived. No, waived. As I understand it, waived going up to the BIA. I believe that was also mentioned in the BIA brief. You say you waived it everywhere. Yes, I believe that. I believe the fact that he sought medical treatment was raised in every brief. I don't. I have it over on my table. At every stage. I believe, yes. Preserved below and then raised here. That's my impression. That's your position. Yes. All right. I believe that, you know, that's another issue regarding Dave repeatedly talked about the fact that he did not mention the beating or I believe mentioned medical treatment in his statement attached to his asylum application. And I believe he also, his wife's letter doesn't really mention what happened to him at all at the police station. He doesn't mention it there. They've mentioned it in their brief. But, again, that's, you know, the immigration judge made findings of fact and that's his job to do that. And he found the person credible. So, you know, regarding whether this person mentioned that or not in his statements, we're past that now. That was something for the immigration judge to decide. He found that, you know, the person sought medical attention, that they were beaten in jail. So the parts of the government's brief regarding, you know, well, he didn't mention it in his statement. And, you know, they themselves said that they did not, they're not trying to re-argue credibility here. But I can't imagine why they would write that in their brief if they weren't trying to re-argue credibility. I mean, we're past credibility here. So I don't believe that that's an issue at all. I think, you know, Mr. Nia at least is entitled to a fair evaluation of his case. And I think when you have a statement like that in the brief saying, even by the board saying, well, he never sought medical treatment. I mean, and again, you know, when you raise the issue to the board, the board themselves made the mistake of whether he sought medical treatment or not. When the lawyers writing Mr. Nia's brief to the board, he doesn't know in advance whether they're going to make a mistake like that. That, oh, he didn't, you know, he didn't seek medical treatment when in fact he did. As far as, again, as far as. Actually, the finding is not that he didn't seek medical treatment. The finding is that respondents required, there is no evidence that respondents required medical treatment for his injury or suffered any long-term health effects. The last part is clearly borne out by the defendant's own testimony, suffering no long-term health effects. The first part, I'm not sure, is a misconstruction of his testimony because he said that they bruised him and therefore he went to the clinic and not the hospital. And maybe you, if you're the fact finder, you can ascertain from that. He didn't need medical treatment. It doesn't say he didn't seek medical treatment. I'm reading from the board's decision. Well, as far as whether, I mean, there is evidence that he sought medical treatment, however. Did you hear what I said? Right, whether he needed it or not. I mean, there's no way to tell from the record one way or the other whether he needed it or not. What you've been consistently telling us is that the board said he didn't seek, found he didn't seek medical treatment. And that was in direct conflict with what the ALJ said, or what the immigration judge said. But in fact, that is not what the board said. But he said he didn't need it and he didn't suffer long-term effects. So they put that in the same sentence, which looks like. As far as whether he needed it or not, I mean, that's really, you know, for his medical professional to decide. You'll notice that he sought. Well, you don't have to walk down the street and your medical professional is coming up and saying to you, you know, whether you need it. Right, but he sought medical, but he received medical treatment. You determine whether you need it. He received medical treatment on more than one occasion, however. If he didn't need medical treatment, why would the doctor see him for a second time or a third time? Let's just say outside the record, you and I can agree that there's some things that you could go for medical treatment for, that you would get medical treatment for, but you might not need it. You might recover without the medical treatment. It strikes me as bad bruises might be in that category. Well, I mean. You don't think that happens? I'm sure. You haven't been around little children and they bruise themselves all the time. I mean, yes, there's a big difference, I would imagine, between cosmetic surgery, which no one needs, and having a heart failure. Sure, I mean, could either, could the people get better? That's not in my hypothetical. All right. Unnecessary. I was really just going back and looking to see what the board said, and it doesn't say he didn't receive medical treatment. Well, I don't think the immigration judge said that he didn't or didn't need the medical treatment either. Okay. And the board can't go beyond the findings that the immigration judge made under the regulations. All right, that's all I have. Thank you. Thank you very much. We will come down. We'll first ask our good clerk to adjourn court, and then we'll come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Robert B. King, Arenda L. Wright Allen